UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

DEBORAH JUNE ALEXANDER,

                 Plaintiff,               14 Civ. 8553

   -against-                         OPINION

THE BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF NEW
YORK, and THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

                 Defendants.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        STEWART LEE KARLIN, ESQ.
        NATALIA KAPITONOVA, ESQ.
        9 Murray Street, Suite 4W
        New York, NY 10007

        Attorneys for Defendants

        ZACHARY W. CARTER
        CORPORATION COUNSEL OF THE CITY OF NEW YORK
        100 Church Street, Room 2-302-b
        New York, NY 10007
        By:  Tanya N. Blocker, Esq.
             Bruce Rosenbaum, Esq.

**Sweet, D.J.**


Defendant the Board of Education of the City School
District of the City of New York ("BOE" or "Defendant") (also
known as and sued herein as the "The Board of Education of the
City School District of the City New York, and The Department of
Education of the City of New York") has moved pursuant to Rules
12(b)(6) and 56 of the Federal Rules of Civil Procedure to
dismiss the complaint of plaintiff Deborah June Alexander
("Alexander" or the "Plaintiff") alleging that BOE unlawfully
terminated her employment in retaliation for exercising her
rights pursuant to the Family and Medical Leave Act ("FMLA" or
the "Act"), 29 U.S.C. §§ 2601, et seq. Based on the conclusions
and findings set forth below, Defendant's motion is granted, and
the complaint dismissed.


**Prior Proceedings**


On August 4, 2014, Plaintiff filed a complaint in the
Supreme Court of the State of New York, Kings County (the
"Complaint"). The Defendant removed the action to this Court on
October 24, 2014 pursuant to 28 U.S.C. § 1441.

1

The Complaint contains the following allegations:[1]

Plaintiff began her employment with the BOE as a school nurse in 2000.  Compl. ¶ 9.  In March 2010, Plaintiff applied for intermittent FMLA leave.  Id. at ¶ 11.  Plaintiff's proffered reason for the leave was to care for her daughter, who had suffered from severe rheumatoid arthritis, and to escort her to physical therapy.  Id. at ¶¶ 11, 18.  Plaintiff requested that the intermittent leave period include every Monday and Wednesday from September 7, 2010 to December 17, 2010 (the "FMLA leave period").  Id. at ¶ 11.

Following Plaintiff's request, the Office of School Health ("OSH") Bronx Borough Nursing Director Eileen Cotter ("Ms. Cotter") appeared "visibly upset" about the request and "questioned why she was applying for FMLA so early for September, that the FMLA form look[ed] suspicious, and [noting] how it only takes an hour to have therapy."  On August 6, 2010, while reviewing Plaintiff's FMLA leave application, the BOE

---

[1]     Pursuant to FRCP Rule 12(b)(6), Plaintiff's allegations are assumed to be true for purposes of this motion.  In addition to the allegations in Plaintiff's complaint, the following documents annexed to Defendant's motion to dismiss are incorporated by reference: the Aug. 19, 2011 Termination Letter, Exhibit B (hereinafter "Termination Letter") to the Declaration of Tanya N. Blocker dated December 01, 2014 (hereinafter "Blocker Decl."); Exhibit C, Special Commissioner of Investigation Report and Findings dated June 16, 2011 (hereinafter "SCI Report") to Blocker Decl.  These documents are considered in connection with both motions of the Defendant.

requested that Plaintiff provide a doctor's note confirming her
daughter's medical condition and the need for Plaintiff to care
for and escort her daughter to her physical therapy sessions,
which Plaintiff provided.  Id. at ¶¶ 13, 14.  The note did not
state what times on Mondays and Wednesdays the physical therapy
sessions were to take place or how long they would generally
last.  See SCI Report at Item B-1.  After receiving the note,
the BOE approved Plaintiff's FMLA leave application.  Compl. ¶¶
15, 18.

From September 7, 2010 and continuing through the
remainder of the FMLA leave period ending on December 17, 2010,
Plaintiff completed a course and clinical practicum at the
College of New Rochelle.  Compl. ¶¶ 18, 23; see also SCI Report
at Items E-1 through E-10.  The course and practicum began in
July 2010, with two sessions taking place on July 13, 2010 from
1:30 p.m. to 4:30 p.m. and on July 23, 2010 from 8:30 a.m. to
1:30 p.m.  Id. at Items E-1 through E-10.  The clinical
practicum sessions continued on Mondays and Wednesdays from
September 15 to December 6 of 2010.  Id.  On most days, the
sessions ran from 7:00 a.m. to 5:00 p.m., but sometimes they
took place from 7:00 a.m. to noon or 1:00 p.m., or from 10:00
a.m. to 6:00 p.m.  Id.  Plaintiff admitted that she did not

escort her daughter to physical therapy during the approved FMLA
leave period.  Compl. ¶ 19.  Her failure to accompany her
daughter to physical therapy during the relevant period was due
to her daughter's refusal to attend the sessions.  Id.
Plaintiff did not communicate to anyone at the BOE, or any of
its agents, that the purpose for which the leave had been
approved no longer existed, or any desire to terminate the
leave.  Instead, Plaintiff returned to work at the end of the
leave period.  See generally Compl. ¶¶ 11, 20, 22.

        Two months after returning from FMLA leave, Plaintiff
submitted an application for tuition reimbursement for classes
she had completed in the Fall of 2010.  SCI Report at Item B-5.
As a result of the tuition reimbursement request, the BOE
referred the matter to the SCI in order to investigate the
circumstances surrounding Plaintiff's FMLA leave.  See SCI
Report.  From March 29, 2011 through June 16, 2011, SCI
conducted an internal investigation regarding Plaintiff's use of
approved FMLA leave during the fall of 2010.  Id.  The SCI
investigation established that Plaintiff had taken courses at
the College of New Rochelle on Mondays and Wednesdays between
September 15, 2010 and December 6, 2010, while on FMLA leave.
The SCI investigation also established that on most days during

4

the relevant period, Plaintiff performed a clinical practicum on
Mondays and Wednesdays from 7:00 am to 5:00 pm, 7:00 am to noon
or 1:00pm, or from 10:00 am to 6:00 pm. Id. SCI also
determined that Plaintiff had attended two initial sessions in
July 2010 in anticipation for the start of the Fall 2010
semester. Id. at Item E-1. In an interview with an SCI
investigator, Plaintiff admitted to attending the clinical
practicum course at the College of New Rochelle on Mondays and
Wednesdays during the time frame in which she had requested and
obtained FMLA leave and acknowledged that she did not notify the
BOE of her daughter's refusal to attend the physical therapy
sessions during the FMLA leave period. Ex. B. SCI also
determined that Plaintiff had previously been denied leave to
complete the clinical program to obtain her degree. Id. at n.2.

On June 16, 2011, the SCI Report recommended that
disciplinary action be taken against Plaintiff. The BOE's
Direct of Nursing, Carole A. Marchese, by letter dated August
19, 2011, terminated Plaintiff's employment stating:

> I concur with SCI's determination and believe that
> your actions were an attempt to improperly use FMLA to
> complete your degree when you knew that the Office of
> School Health does not grant time off to complete a
> practicum. This falsification constitutes misconduct
> that is not only unprofessional but in violation of

guidelines for FMLA.  In addition, OSH incurred over
$9,000.00 in expenses for a substitute nurse to cover
you during your absence.

Effective today, you are hereby terminated from your
employment with the New York City Department of
Education.

Termination Letter at p. 2 of 5.


        The instant motions were heard and marked fully
submitted on January 21, 2015.


**The Applicable Standards**


        On a motion to dismiss pursuant to Rule 12(b)(6), all
factual allegations in the complaint are accepted as true, and
all inferences are drawn in favor of the pleader.  Mills v.
Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).
However, "a plaintiff's obligation to provide the grounds of his
entitlement to relief requires more than labels and
conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
(2007) (internal quotation marks omitted).  A complaint must
contain "sufficient factual matter, accepted as true, to 'state
a claim to relief that is plausible on its face.'"  Ashcroft v.
Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at
570).  A claim is facially plausible when "the plaintiff pleads

factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at
556). In other words, the factual allegations must "possess
enough heft to show that the pleader is entitled to relief."
Twombly, 550 U.S. at 557 (internal quotation marks omitted).
Additionally, while "a plaintiff may plead facts alleged upon
information and belief 'where the belief is based on factual
information that makes the inference of culpability plausible,'
such allegations must be 'accompanied by a statement of the
facts upon which the belief is founded.'" Munoz-Nagel v. Guess,
Inc., No. 12-1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30, 2013)
(quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d
Cir. 2010)) and Prince v. Madison Square Garden, 427 F. Supp. 2d
372, 384 (S.D.N.Y. 2006); see also Williams v. Calderoni, No.
11-3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012). The
pleadings, however, "must contain something more than . . . a
statement of facts that merely creates a suspicion [of] a
legally cognizable right of action." Twombly, 550 U.S. at 555
(quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL
PRACTICE AND PROCEDURE § 1216 (3d ed. 2004)).

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249).

**The Complaint Fails to Allege Adequately an FMLA Discrimination Claim**

A plaintiff may advance a cognizable claim for FMLA violations pursuant to 29 U.S.C. § 2615(a) under two distinct theories: "interference" and "retaliation." See Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004); Emmons v. City Univ. of New York, 715 F. Supp. 2d 394, 417 (E.D.N.Y. 2010), modified (July 2, 2010). Here, Plaintiff attempts to allege a

8

retaliation claim.  See generally Pl.'s Mem. in Opp'n 9-10.  As with other anti-discrimination causes of action, an FMLA retaliation claim is analyzed under the McDonnell Douglas three-step burden shifting framework.  See Roberts v. Health Ass'n, 308 Fed Appx. 568, 570 (2d Cir. 2009) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  To prevail on a FMLA retaliation claim, the complaint must plead facts plausible to establish: (1) that a plaintiff exercised rights protected under the FMLA; (2) plaintiff was qualified for the position; (3) plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  Potenza, 365 F.3d 165 at 168.  Assuming that a plaintiff has pled sufficient facts to satisfy the first three prongs of a retaliation claim, where a complaint fails to show a "causal connection between the protected activity and the adverse employment action" the claim fails.  Perry v. NYSARC, Inc., 424 Fed. Appx. 23 (2d Cir. 2011) (quoting Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996)); Potenza, 365 F.3d at 168.

Retaliatory intent or a causal nexus between the protected activity and the adverse employment action can be established: (i) indirectly through a showing that the protected

activity was followed closely by discriminatory treatment, commonly known as "temporal proximity;" (ii) indirectly through other evidence such as disparate treatment of similarly-situated employees; or (iii) directly through a showing of evidence of retaliatory animus toward plaintiff by defendant. Carr v. West LB Admin., Inc., 171 F. Supp. 2d 302, 309 (S.D.N.Y. Oct. 24, 2001) (citing DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987)).

The Complaint asserts that the Defendant's stated reason for terminating Plaintiff's employment for taking college courses is false. Compl. ¶¶ 23, 25. Plaintiff contends that the practicum courses taken during the FMLA leave period could have been completed "at various times and [the practicum schedule] was very flexible including evening, nights, and weekends." Id. at ¶ 23. Consequently, Plaintiff contends that the BOE's reason for terminated her was pretextual. Id. Plaintiff further alleges that because Plaintiff's FMLA application was submitted in March 2010, well before she knew about or could have registered for fall classes, Plaintiff could not have reasonably submitted a fraudulent FMLA leave application to take college courses. Id. at ¶ 25.

The SCI's Report determined that Plaintiff attended a clinical practicum course on Mondays and Wednesdays during the relevant period primarily between the hours of 7:00 a.m. – 5:00 p.m., which coincides with the time Plaintiff would have been completing her duties as a BOE school nurse in the absence of her FMLA leave. SCI Report at Items E-2- E-10. "Where an employee is terminated because . . . the employee was not using the leave for its 'intended purpose,' an FMLA claim will not lie." LeBoeuf v. New York Univ. Med. Ctr., No. 98 CIV. 0973 (JSM), 2000 WL 1863762, at *3 (S.D.N.Y. Dec. 20, 2000).

Because the FMLA does not provide for intermittent leave to gain an educational benefit, the BOE's decision to terminate Plaintiff for using the leave for an unintended purpose cannot be deemed to be retaliatory. See Potenza v. City of New York Dep't of Transp., No. 00 CIV. 0707 (SHS), 2001 WL 1267172, at *9 (S.D.N.Y. Oct. 23, 2001) ("an employee on protected leave is not entitled to any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."). The Complaint is void of any facts that contradict the SCI findings and the Plaintiff admitted to the facts set forth in the SCI Report.

11

Plaintiff cannot establish the requisite causal link through a showing of temporal proximity.  Plaintiff's was terminated approximately eight months after returning from FMLA leave.  Compl. ¶ 9.  The gap between Plaintiff's termination and her exercise of FMLA leave is too attenuated to create an inference of retaliatory intent.  Reilly v. Revlon, Inc., 620 F. Supp. 2d 524, 538 (S.D.N.Y. 2009); see Galimore v. City Univ. of N.Y. Bronx Cmty. College, 641 F. Supp. 2d 269, 288 (S.D.N.Y. 2009) (citing Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.").  Indeed, the passage of more than two months has been viewed as beyond the "any retaliatory nexus.  Cunningham v. Consol. Edison, Inc., No. 03 Civ. 3522 (CPS), 2006 U.S. Dist. LEXIS 22482, at *55 -*56 (E.D.N.Y. Mar. 28, 2006); Ponticelli v. Zurich American Ins. Group, 16 F.Supp.2d 414, 436 (S.D.N.Y. Sept. 3, 1998).

Moreover, isolated and stray remarks, without more, are insufficient to raise an inference of retaliation.  See

12

Muhleisen v. Wear Me Apparel LLC, 644 F. Supp. 2d 375, 377, 388
(S.D.N.Y. 2009) ("stray remarks [ ] are insufficient to sustain
a reasonable inference that defendant was motivated by . . .
discrimination in its firing of plaintiff, and thereby to
satisfy plaintiff's burden of showing pretext").  Comments
allegedly made by Ms. Marchese that "Plaintiff committed a
felony" or Plaintiff's allegation that Ms. Marchese did not
approve Plaintiff's leave request do not satisfy Plaintiff's
burden of pleading retaliatory intent.  See Compl. ¶24.  The
"sheer possibility that [BOE] has act[ed] unlawfully" due to
Plaintiff's superior's alleged physical display of displeasure
and/or suspicions when Plaintiff requested the leave in March
2010 fails to adequately allege an inference of discriminatory
animus as to her termination is August 2011.  Iqbal, 556 U.S. at
678; see Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115
(2d Cir. 2007) abrogated in part on other grounds by Gross v.
FBL Fin. Servs., Inc., 557 U.S. 167 (2009) ("the more remote and
oblique the remarks are in relation to the employer's adverse
action, the less they prove that the action was motivated by
discrimination").  "Although [P]laintiff interprets the
statements as indicative of discriminatory animus, [Defendant's]
comment that [P]laintiff needed to return quickly from maternity
leave could also be construed as affirming her importance to

13

[D]efendant. . . .  Accordingly, such statements, without more, are insufficient to salvage [P]laintiff's lawsuit." Muhleisen, 644 F. Supp. 2d at 388.

Plaintiff's return to work after her leave counters any inference of discrimination Plaintiff seeks to establish. Reinstating Plaintiff to her nursing post upon her return gives rise to an inference that Plaintiff's superior's alleged displeasure was not the catalyst for Plaintiff's termination. See LeBoeuf, 2000 WL 1863762, at *4 ("[E]ven if one accepts as true that [an employer] was angry because Plaintiff took his leave at a critical time, the fact that [Plaintiff] was reinstated despite [the] alleged displeasure gives rise to the inference that [the manager's] anger at Plaintiff was not the reason for his termination.").  The eight month gap between Plaintiff's discharge and exercise of FMLA leave is too attenuated to create an inference of retaliatory intent to be facially plausible.

Plaintiff has alleged that the BOE's proffered termination decision was actually a pretext for discrimination, because Plaintiff submitted her leave application in March 2010 "well before the time she register" for fall classes and well

14

before the time she knew what classes where available and the
respective schedule.  Pl. Opp. 15.  However, Plaintiff
acknowledges that the leave as approved was "for the purpose of
attending to her daughter and taking her to physical therapy,"
that Plaintiff never utilized the leave for its approved
purpose, and that during the approved leave period, Plaintiff
completed a college course and clinical practicum at the College
of New Rochelle.  See Pl. Opp. 10-12; Declaration of Deborah
June Alexander, ("Pl. Alexander Decl.") dated December 29, 2014,
at ¶¶ 4, 15, 20.


        Relying on a letter dated August 31, 2011, from the
College of New Rochelle, Plaintiff contends that the clinical
practicum hours could have been completed at various times,
including nights and weekends.  Pl. Opp. 12.  However, the
letter is silent with respect to the meeting times of the
practicum.  See Declaration of Stewart Lee Karlin dated December
30, 2014 (hereinafter "Karlin Decl.") Ex. 1 (hereinafter "New
Rochelle Letter").  Rather, the New Rochelle Letter only
confirms the meeting time of the course Plaintiff completed on
Monday evenings from 6:00 p.m. to 8:00 p.m., which was in
addition to the required clinical practice hours.  Id.


                              15

Alternative hours for the practicum, unknown to the Defendant,
fail to establish retaliatory intent.

Plaintiff has also contended that the only appropriate
standard in deciding the present motion to dismiss requires that
this Court "take Plaintiff's allegation in [a] light most
favorable to the non-movant." Pl. Opp. 13. Where, as here, the
allegations pled in the complaint are "contradicted by documents
on which the complaint relies" the reviewing court "need not
accept as true an allegation" pled nor draw inferences in its
favor. In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d
549, 555 (S.D.N.Y. April 1, 2004).

In sum, the BOE has demonstrated a legitimate non-
discriminatory reason for terminating Plaintiff. It has made an
adequate showing by providing evidence incorporated by reference
that substantiates its decision to terminate Plaintiff.
Plaintiff is unable to invalidate this showing, having not
established a lack of credibility as to the reason proffered, or
that the discharge was more likely than not motivated by
discrimination. Consequently, Plaintiff has not made the
requisite showing of retaliatory intent. See LeBoeuf, 2000 WL
1863762, at *3.

16

**No Material Facts in Dispute**

As the Plaintiff has correctly noted, Defendant failed to submit a Statement of Undisputed Facts, pursuant to Local Rule 56.1, which can be grounds for denial of a motion for summary judgment.  However, the Court has "broad discretion to determine whether to overlook a party's failure to comply." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001); see also Spiegel v. Schulmann, 604 F.3d 72, 84 (2d Cir. 2010). Provided there is support in the record, the Court may choose to accept all factual allegations of the opposing party or opt to conduct an "assiduous review of the record" in deciding this motion.  Osuna v. Gov't Employees Ins. Co., No. 11-CV-3631 JFB AKT, 2014 WL 1515563, at *2 (E.D.N.Y. Apr. 17, 2014) (internal quotations and citations omitted).  Given that the record contains "sufficient evidence that is easily reviewable" in relation to its size, and the parties have submitted fulsome affidavits which have been reviewed by the Court in the exercise of discretion and judicial efficacy, the summary judgment issues will be resolved.

17

The Plaintiff has contended that several material issues of fact exist but cites only to one.  Plaintiff argues that "Defendant's exhibits[,] which hint that Plaintiff took the leave in order to obtain time off to take classes and using her daughter's illness as an excuse" is "contradicted by the complaint" and exhibits attached to Karlin's Declaration and Plaintiff's declaration, thereby creating a triable issue of fact.  However, it is Defendant's intent, not Plaintiff's, that is material to an FMLA retaliatory claim.  See Genovese v. Goodyear Tire & Rubber Co., No. CV-04-4505 SJF AKT, 2007 WL 2746917, at *5 (E.D.N.Y. Sept. 18, 2007) (referencing FMLA retaliation claims where employer's intent is material).

As concluded above, Plaintiff has the burden of establishing the retaliatory intent element of her FMLA retaliation claim.  The evidence presented by Plaintiff is "simply incompatible with and inference of retaliatory intent." Washington v. Acorda Therapeutics, Inc., No. 11 CV 5085 VB, 2014 WL 4467820, at *13 (S.D.N.Y. Aug. 28, 2014).  The complaint is void of sufficient facts to rebut Defendant's reason for terminating Plaintiff as determined by the SCI Investigation: her abuse of FMLA leave to obtain an advanced degree. Plaintiff's explanation that she "was never advised that she had

18

to apprise her employer of the need to terminate her FMLA
intermittent leave" is rebutted by BOE's prior refusal of her
request for leave to complete the clinical program as determined
in the SCI Report.  See Compl. ¶ 20.  Moreover, the BOE
published a Chancellor's Regulation on its website relating to
FMLA leave policy, which provides that "[s]hould it become
apparent that it will be possible to resume service earlier than
the date originally projected, the employee must notify the
principal or office supervisor of that fact as soon as
possible."  See Chancellor's Regulation C-603, § 5 at p. 4,
publicly available at http://docs.nycenet.edu/docushare/
dsweb/Get/Document-75/C-603__8-1-02.pdf.


        Defendant has presented documentary evidence
corroborating its termination decision, thereby presenting no
genuine issue of material fact.  It is undisputed that Plaintiff
completed her clinical practicum hours on approximately four
Mondays and several Wednesdays between September 15, 2010 and
December 6, 2010.  Upon learning of Plaintiff's misuse of FMLA
leave following Plaintiff's request to be reimbursed for the
college course and practicum completed during the relevant
period, and after an independent investigation, it is undisputed

19

that Defendant terminated Plaintiff's employment.  Consequently, no issues of fact remain with respect to Plaintiff's claims.

**Conclusion**

        Based on the conclusions and facts set forth above, the motion of the Defendant to dismiss Plaintiff's Verified Complaint and for summary judgment is granted.


        It is so ordered.



New York, NY

May 13, 2015

————————————————————

                                ROBERT W. SWEET

                                    U.S.D.J.

20